UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHAUNTAE ROBERTSON,                )
                                   )
Plaintiff,                         )
                                   )
vs.                                )       Case No. 3:22-cv-00750-GCS
                                   )
MICHAEL MOLDENHAUER, ALISA         )
DEARMOND, and TAWANNA              )
KING,                              )
                                   )
Defendants.                        )

MEMORANDUM & ORDER

SISON, Magistrate Judge:

INTRODUCTION

Pending before the Court are the Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Michael Moldenhauer, Alisa Dearmond, and Dr. Tawanna King. (Doc. 38, 43). Defendants Dearmond and Moldenhauer filed their Motion for Summary Judgment along with a Memorandum in Support on November 7, 2022. (Doc. 38, 39). Defendant King filed her Motion for Summary Judgement and Memorandum in Support on November 22, 2022. (Doc. 43, 44). Plaintiff Shauntae Robertson filed a Response to these Motions on January 19, 2023. (Doc. 52). For the reasons delineated below, the Court **GRANTS in Part** and **DENIES in Part** Defendant Dearmond's and Moldenhauer's Motion for Summary Judgment and **GRANTS** Defendant King's Motion for Summary Judgment.

On April 18, 2022, Plaintiff Robertson, an inmate in the custody of the Illinois Department of Corrections ("IDOC") currently incarcerated in Menard Correctional

Center ("Menard") brought this civil action against Defendants pursuant to 42 U.S.C. § 1983. (Doc. 1). In his Complaint, Plaintiff asserts violations of his Eighth Amendment rights due to Defendants' alleged deliberate indifference to his serious medical needs arising from the treatment of his torn right rotator cuff. *Id*. On April 25, 2022, the Court completed its preliminary review of Plaintiff's Complaint pursuant to U.S.C. § 1915A. (Doc. 8). The Court allowed Plaintiff to proceed with the following counts:

> **Count 1**: Eighth Amendment deliberate indifference by Defendants Dearmond and Moldenhauer, and Nurse Maryanne[1] for their treatment of Plaintiff's shoulder.

> **Count 2**: Eighth Amendment deliberate indifference by Defendant King for her treatment of Plaintiff's shoulder injury.

*Id.* at p. 9.

## FACTUAL BACKGROUND

In June 2021, Plaintiff was lifting weights at Menard when he injured his right shoulder muscle. (Doc. 1, p. 12). Due to COVID-19, Plaintiff was instructed by correctional officers to submit a written request to the Health Care Unit ("HCU") to get treatment. *Id.* Plaintiff alleges that his recognizable pain fell on deaf ears. *Id.* On July 6, 2021, Plaintiff was seen by Nurse Practitioner Moldenhauer ("Moldenhauer") concerning complaints of shoulder pain and an abnormally swollen chest. (Doc. 44, Exh. C, p. 34). In response to Plaintiff's concerns about pain due to a possible muscle tear, Moldenhauer

---

[1]     The Court dismissed Count 1 against Defendant Nurse Maryanne because "Plaintiff's allegations d[id] not suggest that she failed to render care." (Doc. 8, p. 5).

ordered a chest x-ray and prescribed pain medication. *Id.* Plaintiff alleges Moldenhauer gave him some weak pain medication that did not help his obvious pain. (Doc. 1, p. 13).

Plaintiff was scheduled for a chest and shoulder x-ray on July 29, 2021; however due to Menard being on level 1 lockdown, security did not bring Plaintiff to his appointment. (Doc. 44, Exh. B, p. 10). As such, Plaintiff's chest and shoulder x-rays were rescheduled for August 4, 2021. *Id.* Plaintiff was not brought to this rescheduled appointment because Menard was once again on a level 1 lockdown. *Id.* at p. 11.

On August 19, 2021, Plaintiff was evaluated by physical therapy, who noted that he had a "significant pec major tear." (Doc. 44, Exh. B, p. 13). Plaintiff was referred to an orthopedic provider for evaluation. *Id.* That same day Plaintiff filed Grievance No. 222-8-21, in which he alleges that he had not been seen by a medical professional, had not been sent for an x-ray (as ordered by Moldenhauer), nor had he received a refill on his pain medication. (Doc. 44, Exh. C, p. 33–34). Further, Plaintiff noted that after his initial visit with Moldenhauer, he had spent weeks complaining of constant shoulder and chest pain. *Id.* On August 25, 2021, Plaintiff underwent a shoulder and chest x-ray which was interpreted by a radiologist as demonstrating a high riding humerus, mild osteoarthritis of the AC and glenohumeral joint, and no acute body fractures. (Doc. 44, p. 6; Doc. 1, p. 77).

On August 30, 2021, Plaintiff was seen by Nurse Practitioner Defendant Dearmond ("Dearmond") for the first and only time. (Doc. 44, Exh. D, p. 34). Dearmond renewed Plaintiff's prescription for pain medication and referred him for an MRI and orthopedic evaluation. *Id.*

Plaintiff was then seen by Defendant Dr. King ("King") on August 30, 2021. (Doc. 44, Exh. B, p. 16–17). King performed a physical examination of Plaintiff and discovered a possible complete tear of the pectoralis muscle. (Doc. 1, p. 51–52). Plaintiff reported that King clearly recognized his pain and could see the muscle tear. *Id.* at p. 13. King recommended an MRI of the chest and referred Plaintiff to orthopedics pending the MRI findings. (Doc. 44, Exh. B, p. 16–17). King also renewed Plaintiff's prescription for Robaxin. *Id.* at p. 17. Per the medical records, King completed a Medical Special Services Referral and Report form for the chest MRI. *Id.* at p. 18.

On September 2, 2021, Plaintiff received authorization for an MRI of his chest. (Doc. 1, p. 54). On October 5, 2021, Plaintiff filed Grievance No. 112-10-21, in which he complained that he had not been given a refill of the pain medication ordered by King and had not yet undergone the MRI. (Doc. 44, Exh. C, p. 29–30). In Grievance No. 112-10-21, Plaintiff also alleges that despite King's findings, he never received emergency surgery, nor did he receive an emergency MRI until months after his visit with King. (Doc. 1, p. 13). Further, Plaintiff states that he was only given pain medication once by King "for 3 months" and that he never received the medication that was prescribed by King despite many written requests to the HCU. *Id.* Plaintiff noted that his pain was constant and that it prevented him from completing daily activities without help, such as getting in and out of his top bunk. *Id.* at p. 14. Plaintiff's medical records show that Plaintiff had an MRI of his chest on October 27, 2021. (Doc. 1, p. 69–71).

Defendants attached a portion of Plaintiff's grievance record to their Memorandums of Support, which contained Plaintiff's grievances covering the time-

period for the above-mentioned allegations. (Doc. 39, Exh. 1, 2; Doc. 44, Exh. C, D). Defendants also attached selections of Plaintiff's medical records to their Memorandum of Support. (Doc. 39, Exh. 3, 4; Doc. 44, Exh. B, E). Plaintiff provided the Court with selections of medical records and counseling summaries as well. (Doc. 1, p. 45–78). Below is a summary of the contents of the relevant grievances and their procedural history:

1. *Grievance No. 222-8-21 (Submitted on August 19, 2021)*

On August 19, 2021, Plaintiff submitted Grievance No. 222-8-21 ("222-8-21"). (Doc. 44, Exh. C). In the grievance, Plaintiff complained of excruciating pain in his right shoulder along with difficulty of movement due to his injury. *Id.* at p. 33–34. Plaintiff reported that he had put in multiple times for sick call in the last week and received no response from medical. *Id.* Plaintiff further reported that he was not seen by medical until July 2021 when a nurse practitioner gave him pain medications and scheduled him for an x-ray and physical therapy. *Id.* Plaintiff also complained that his chest was abnormally swollen from the muscle tear. *Id.*

The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on August 26, 2021. (Doc. 44, Exh. D, p. 34). On August 31, 2021, Grievance Officer Kelly Pierce ("Pierce") requested that Nursing Supervisor Ron Skidmore ("Skidmore") in the HCU investigate Plaintiff's allegations. *Id.* In his review, Skidmore reported the following:

> Offender was seen by Nurse Sick Call on 6/24/2021 for right pectoral and anterior shoulder pain. He was given 18 tabs of Acetaminophen 325 mg and Ibuprofen 200 mg each. He was seen by Nurse Practitioner Moldenhauer on 7/6/2021 for right shoulder pain and ordered a chest x-ray, physical therapy, and Robaxin 500mg PO BID twice a week and Motrin 600mg twice

> a week. Chest x-ray was scheduled for 7/29/21 but could not be seen due to being on level 1 lockdown. Offender received chest x-ray on 8/25/21 Offender was seen by NSC and referred to MD/NP call line for shoulder pain. Evaluated for physical therapy on 8/19/21 and referred for orthopedic evaluation. Seen by Nurse Practitioner Dearmond on 8/30/21 and referred for MRI and orthopedic evaluation.

*Id.* at p. 35. On September 7, 2021, Grievance Officer Pierce recommended that Plaintiff's grievance be denied as moot based on Skidmore's review of Plaintiff's medical file. *Id.* at p. 34. On September 8, 2021, the Chief Administrative Officer ("CAO") concurred with Pierce's denial of the grievance. *Id.*

Plaintiff filed an appeal with the Administrative Review Board ("ARB") on September 22, 2021.[2] (Doc. 44, Exh. D, p. 33). Based on a review of all available information, the ARB noted the following:

> Per nursing supervisor grievant was seen on 06/24/21 for shoulder pain, referred to MD/NP call line and given medication. Grievant was seen by NP on 07/06/21 for should[er] pain, chest xray ordered and given medication for pain. Xray appointment on 07/29/21 was cancelled due to lockdown. Grievant evaluated by PT on 08/19/21 and referred to ortho and received Xray on 08/25/21. Treatment is at the discretion of the IDOC physician. Grievant awaiting approval for MRI in collegial process.

*Id.* On September 27, 2021, the ARB denied Plaintiff's appeal finding that it was appropriately addressed by the facility Administration. *Id.*

---

[2]     The Court notes that Plaintiff's appeal to the Administrative Review Board was not signed by Plaintiff. (Doc. 44, Exh. D, p. 34).

## 2. *Grievance No. 112-10-21 (Submitted on October 5, 2021)*

On October 5, 2021, Plaintiff submitted Grievance No. 112-10-21 ("112-10-21").[3] (Doc. 44, Exh. C, p. 28). In the grievance, Plaintiff complains of excruciating pain from the muscle tears as well as chest pain and headaches. *Id*. at p. 30. Plaintiff alleged that he had gone weeks without his prescribed pain medication despite requesting relief from sick

---

[3]      In his complaint, Plaintiff reports that he filed two grievances concerning the pain caused by his shoulder injury, one on July 20, 2021, and the other on October 5, 2021. (Doc. 1, p. 13). However, Plaintiff alleges that that he did not receive responses to either of these grievances from the Grievance Officer. *Id*. The Court notes that the grievance filed by Plaintiff on October 5, 2021, is in fact Grievance No. 112-10-21. Thus, Plaintiff did receive a response by the Grievance Officer. (Doc. 44, Exh. C, p. 28). Plaintiff's July 20, 2021, grievance is attached to Plaintiff's initial complaint. (Doc. 1, p. 39). The grievance is not stamped to indicate receipt by the Grievance Officer. *Id*. The grievance cannot be located anywhere else in the record. However, even if it were received and Plaintiff had proceeded through all levels of exhaustion properly, the substance of the grievance does not concern the Defendants. Plaintiff's grievance submitted on July 20, 2021, states the following:

> In about the first or second week in June 2021, I torn my muscle from shoulder bench pressing weights on the yard, when muscle tear. The weights had fell to my chest and multiple inmates had to help pull the weights off me. When coming off the yard and goin[g] back to the east cell house I told and shown multiple officers the recognizable injury pain and muscle tear from arm. The officers told me to write and put in for sick call despite me not being able to lift my right arm over my head while my pain was a recognizable emergency. I went weeks before I was even seen by sick call and giv[en] some meds. John and Jane Doe Officers told me because of COVID-19 they are not running any call passes to healthcare and that I will have to write them.

*Id*. Based on the text of Plaintiff's July 20, 2021, grievance, it is apparent that Plaintiff is complaining about the inadequate response by officers within the facility after his injury occurred as opposed to complaining about the treatment he received from Defendants Moldenhauer, Dearmond or King. Plaintiff expresses frustration over the amount of time it took him to be seen at sick call and in the grievance alleges that this delay was caused by the John and Jane Doe Officer's instructions to write to sick call. Further, in the "Relief Requested" portion of the grievance, Plaintiff requests that "the issue with the officers . . . be investigated" and that he "be treated for the injuries, with goin[g] out for MRI follow by emergency surgery for muscle tear and pain." *Id*. This further demonstrates that Plaintiff was concerned about the procedures dictated by the officers and the potential delay their instructions caused him in receiving timely treatment.

call. *Id*. Plaintiff requested that he be seen by a physician, be given an MRI, and be provided with a renewal of his pain medication to treat his ongoing injury. *Id*. at p. 29.

The grievance was marked as an emergency by Plaintiff; as such, it was deemed of an emergency nature by the Warden on October 13, 2021. (Doc. 44, Exh. C, p. 28). On October 14, 2021, Grievance Office Pierce requested that Health Care Unit Administrator, Angela Crain ("Crain") investigate Plaintiff's allegations. *Id.* Upon reviewing Plaintiff's medical records, Crain noted that the HCU had not received a written request from Plaintiff for renewal of his pain medication. *Id.* Crain proceeded to schedule Plaintiff for medication renewal and for an MRI appointment. *Id.* On October 27, 2021, the CAO concurred with the Grievance Officer's denial of the grievance as moot. *Id.* Plaintiff did not appeal the grievance response to the ARB. *Id*.

### 3. *Grievance No. 234-4-22 (Submitted on April 13, 2022)*

On April 13, 2022, Plaintiff submitted Grievance No. 234-4-22 ("234-4-22"). (Doc. 44, Exh. D, p. 28). In the grievance, Plaintiff reported that on or around April 10, 2022, he experienced excruciating chest pain related to his right shoulder injury. *Id*. Plaintiff reported that he was taken to the HCU but was not given any pain medication; he also reported that he had not been getting the pain medication previously ordered by Dr. King. *Id.* at 28–29. Plaintiff further reported that two days later, on a sick call pass, he explained to nurse "Jane Doe" that his pain from the torn muscle was made worse when handcuffed behind the back; as such, he requested a front cuff permit. *Id.* at 29. Plaintiff alleged that nurse "Jane Doe" told him that he will not be given a front cuff permit until he gets the MRI. *Id*. Plaintiff informed nurse "Jane Doe" that he already had an MRI in

October 2021, and it confirmed his complete muscle tear. *Id*. Plaintiff alleged that nurse "Jane Doe" did not even have his medical chart during the medical visit. *Id*. Plaintiff requested "to be seen by a real doctor, obtain treatment for [his] injuries, pain meds, and hope to be giv[en] a front cuff permit, [and] to go out for surgery." *Id*. at p. 28. The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on April 26, 2022. (Doc. 44, Exh. D, p. 26).

On April 26, 2022, Grievance Officer Kelly Pierce ("Pierce") requested that Kimberly Martin ("Martin") in the HCU investigate Plaintiff's allegations. (Doc. 44, Exh. D, p. 26). In her review of Plaintiff's medical records, Martin reported the following:

> The individual in custody was referred for approval of an MRI of his right chest on 8/30/21. The individual in custody received the approved MRI on 10/27/21. Upon review of the MRI results, on 1/12/22 the individual in custody was recommended and referred for an MRI of his C-spine with/without contrast for further evaluation. The individual in custody was also referred for an Ortho evaluation after imaging completed. The Ortho consultation was cancelled by the Orthopedist and advised he needed to be referred for a General Surgery evaluation. The General Surgery evaluation was cancelled by the General Surgeons office due to the individual in custody needing to be referred to a Cardiothoracic Surgeon for his concerns. The individual in custody received the approved MRI of his C-spine on 04/19/22 and is awaiting his scheduled appointment with a Cardiothoracic Surgeon for evaluation post imaging. The individual in custody was referred to an MD/NP call line for cuffing evaluation and to discuss MRI results. The individual in custody is awaiting his scheduled appointment with an MP/NP to address his cuffing and pain medication concerns.

*Id*. at 27. On April 27, 2022, Grievance Officer Pierce recommended that Plaintiff's grievance be denied as moot based on Martin's review of Plaintiff's medical file. *Id*. at p. 26. On April 28, 2022, the CAO concurred with Pierce's denial of the grievance. *Id.*

Plaintiff filed an appeal with the ARB on May 5, 2022. (Doc. 44, Exh. D, p. 25). On May 17, 2022, the ARB denied Plaintiff's appeal finding that it was appropriately addressed by the facility Administration. *Id*. Based on a review of all available information, the ARB noted "per HCUA- Grievant is receiving medical attention for the reported issues. Treatment is at the discretion of the licensed medical provider." *Id*.

### 4. Grievance No. 168-5-22 (Submitted on May 13, 2022)

On May 13, 2022, Plaintiff submitted Grievance No. 168-5-22 ("168-5-22"). (Doc. 44, Exh. D, p. 18–19). In the grievance, Plaintiff expressed frustration regarding a nurse's lack of concern towards his injury and pain. *Id*. at p. 19. Plaintiff reported that he was called to see a nurse on May 13, 2022, to have his blood pressure checked. *Id*. Plaintiff alleged that for nearly a year he had gone without pain medication or treatment. *Id*.

The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on May 17, 2022. (Doc. 44, Exh. D, p. 17). On May 18, 2022, Grievance Officer Kelly Pierce ("Pierce") requested that Kimberly Martin ("Martin") in the HCU investigate Plaintiff's allegations. *Id*. In her review, Martin indicated that Plaintiff's grievances regarding an alternate cuffing permit and torn muscle pain were addressed in Grievance No. 234-4-22. *Id*. Martin also indicated that on May 13, 2022, Plaintiff "was seen by a CNA" for a "scheduled blood pressure check" and his "medical records d[id] not substantiate his reporting of a torn muscle pain or request for an alternate cuffing permit on 5/13/22." *Id*. Martin provided that "a CNA cannot administer medication and the individual in custody has already been referred offsite for his torn muscle concerns." *Id*.

On May 24, 2022, Grievance Officer Pierce recommended that Plaintiff's grievance be denied as moot based on Martin's review of Plaintiff's medical file. (Doc. 44, Exh. D, p. 17). On May 24, 2022, the CAO concurred with Pierce's denial of the grievance. *Id.* Plaintiff then filed an appeal with the ARB on June 2, 2022. *Id.* at p. 16. On June 6, 2022, the ARB returned Plaintiff's grievance citing "this office previously addressed this issue on May 17, 2022." *Id.*

5. *Grievance No. 207-5-22 (Submitted on May 18, 2022)*

On May 18, 2022, Plaintiff submitted Grievance No. 207-5-22 ("207-5-22"). (Doc. 44, Exh. D, p. 23). Plaintiff reported that on May 18, 2022, at approximately 6:00 p.m., he "called for a med tech to get . . . some help and hopefully care for the pain [he] [was] experiencing." *Id.* Plaintiff alleged that two correctional officers told him that he would have to wait until the nurse came at 7:00 [p.m.] and that they had already contacted the HCU. *Id.* at p. 24. When Nurse Practitioner Morgan came to check on Plaintiff at approximately 7:35, she was allegedly unaware of Plaintiff's injury. *Id.* Plaintiff expressed concerns regarding the gallery officer's truthfulness when he allegedly told the Plaintiff that he had called the HCU because "Nurse Morgan acted like she never knew . . . [about] this issue." *Id.*

The grievance was marked as an emergency by Plaintiff; as such, it was expedited to the Grievance Officer for review on May 20, 2022. (Doc. 44, Exh. D, p. 21). Plaintiff did not request specific relief in this grievance. *Id.* On May 20, 2022, Grievance Officer Kelly Pierce ("Pierce") requested that Kimberly Martin ("Martin") in the HCU investigate Plaintiff's allegations. *Id.* In her review, Martin provided the same information as in

Grievance No. 234-4-22. *Id*. at p. 22, 27. Pierce also contacted Officer Davis ("Davis"), the "gallery officer" that Plaintiff referred to in his grievance. *Id*. at p. 21. Davis alleged that he called the HCU when Plaintiff complained of his chest pain. *Id*.

Grievance Officer Pierce recommended that Plaintiff's grievance be denied as moot because "[t]he issue of treatment for his torn muscle was addressed in grievance #234-4-22." (Doc. 44, Exh. D, p. 21). On May 25, 2022, the CAO concurred with Pierce's denial of the grievance. *Id*. Plaintiff then filed an appeal with the ARB on June 2, 2022. *Id*. at p. 16. On June 6, 2022, the ARB returned Plaintiff's grievance citing "this office previously addressed this issue on May 17, 2022." *Id*. at p. 20.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in its favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role in determining the outcome of a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter. Instead, the Court's role is to determine whether a genuine issue of material fact exists. *See National Athletic Sportswear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008).

Therefore, it is up to the Court to evaluate whether an inmate has exhausted administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that an inmate did not exhaust administrative remedies, the plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.[4] *Id.* at 742. Alternatively, if the Court determines that the failure to exhaust was the plaintiff's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claim. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA.

---

[4]     *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

*See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Nor may a prisoner file a lawsuit while he or she is simultaneously proceeding through the prison's grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

This result comports with the PLRA's statutory purpose of "afford[ing] corrections officials the time and opportunity to address complaints internally before allowing the initiation of a federal case." *Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012) (quoting *Porter v. Nussle*, 534 U.S. 516, 524-525 (2002)). Additionally, the exhaustion requirement provides prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo,* 286 F.3d at 1023-24. Grievances are not intended "to put individual defendants on notice of a lawsuit" but rather serve to alert prison officials of issues affecting inmates. *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 582 (7th Cir. July 13, 2010). Therefore, an inmate's failure to explicitly name defendants in a grievance is not fatal to exhaustion so long as the "grievance serve[s] its function by providing prison officials a fair opportunity to address [the] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See also Jones v. Bock*, 549 U.S. 199, 219 (2007) (explaining that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances"). Instead, an inmate

is only required to "articulat[e] what facts the prison could reasonably expect from a prisoner in [his or her] position." *Glick*, 385 Fed. Appx. at 582 (highlighting that an inmate "need identify names only to the extent practicable").

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* at (c). Nonetheless, an inmate is not "preclude[d] from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id.*

Should the inmate not be satisfied with the counselor's response, the inmate can then submit a formal grievance to the prison's grievance officer. *See* 20 ILL. ADMIN. CODE § 504.810(a)-(b). The grievance officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See id.* at (e). The CAO shall review the findings and recommendations from the grievance officer and advise the inmate of the decision in writing. *Id.* If the inmate is not satisfied with the CAO's decision, the inmate can then formally appeal to the Director through the ARB within 30 days of the CAO's decision.

*See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *See id*. The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See id*. at (d)–(e).

DISCUSSION

Defendants first argue that Plaintiff's claims should be dismissed because he did not exhaust his administrative remedies for Grievance Nos. 234-4-22, 168-5-22, and 207-5-22 prior to filing this lawsuit, as required by 42 U.S.C. § 1997(e). (Doc. 39, p. 13; Doc. 44, p. 18-19). Particularly, Defendants argue that Plaintiff filed this lawsuit prematurely before fully exhausting all available remedies. *Id*. The case docket shows that Plaintiff filed this lawsuit on April 18, 2022. (Doc. 1). Plaintiff's grievance record shows that he filed Grievance No. 234-4-22 on April 13, 2022, and the ARB issued its decision denying the grievance on May 17, 2022. (Doc. 39, Exh. 1, p. 25-27). Plaintiff's grievance record further shows that Plaintiff filed Grievance Nos. 168-5-22 and 207-5-22 on May 13, 2022, and May 18, 2022, respectively; the ARB issued its responses to both grievances on June 6, 2022. *Id*. at p. 16-18, 20-22. Plaintiff does not contest these facts in his Complaint or in his Response to Defendants' Motions for Summary Judgment.

In *Chambers v. Sood*, the Seventh Circuit reaffirmed that "[b]y its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable." 956 F.3d 979, 984 (7th Cir. 2020) (quoting *Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004) (finding that a prisoner's filing was fatally premature even though he filed his case in district court only two days before receiving

Page 16 of 20

the prison's final decision)). Thus, to fulfil the requirements of exhaustion, "it is clear that a prisoner cannot . . . file[] suit during the pendency of a required administrative response period." *Hoskins v. Johnson, et al.*, Cause No. 3:19-cv-01303-GCS, 2020 WL 7263286, at *6 (S.D. Ill. Dec. 10, 2020). *Cf. Gregory v. Santos*, Civil No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010) (stating that prisoner has failed to exhaust where he gave the ARB "only a few days leeway beyond the 6-month period."); *Kyles v. Mathy*, No. 09-1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010) (noting that prisoner exhausted when he waited approximately one and half months after the expiration of the two-month response deadline before moving on to the next step of the grievance process). Here, Plaintiff did not receive responses from the ARB until nearly a month after he filed the present lawsuit. (Doc. 39, Exh. 1, p. 16-18, 20-22, 25-27). Consequently, Plaintiff jumped the gun and did not fully exhaust his administrative remedies for Grievance Nos. 234-4-22, 168-5-22, or 207-5-22 prior to filing suit.

Regarding Grievance No. 112-10-21, the Court also finds that Plaintiff failed to exhaust his administrative remedies. Defendants argue that Plaintiff failed to fully exhaust his administrative remedies for this grievance because he did not appeal the grievance to the ARB. (Doc. 39, p. 14-15; Doc. 44, p. 16-17). Plaintiff's Facility Grievance Records and Cumulative Counseling Summary indicate that Plaintiff submitted Grievance No. 112-10-21 on October 5, 2021 and received a response from the Chief Administrative Officer on October 27, 2021. (Doc. 44, Exh. C, p. 28-29). Plaintiff's records do not indicate that he submitted the grievance to the ARB nor does Plaintiff challenge the availability of this administrative remedy. *Id.*

As an inmate confined in the IDOC, Plaintiff was obligated to follow the regulations contained in the IDOC grievance procedures. These procedures detail a three-step administrative process for resolving inmate grievances. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. Inmates, like Plaintiff, must proceed through all three levels of the administrative process before a grievance can be exhausted. *See, e.g.*, *Collier v. Conrad*, Case No. 13-cv-0870-MJR-SCW, 2014 WL 3057387, at *4 (S.D. Ill. July 7, 2014) (noting that where a Plaintiff concedes that he did not appeal to the ARB that Plaintiff did not fully exhaust his administrative remedies); *Austin v. Rhoades, et al.*, Case No. 3:21-cv-00269-SMY, 2023 WL 2374361, at *3 (S.D. Ill. Mar. 6, 2023) (finding that "[b]ecause it was undisputed that [Plaintiff] did not submit a grievance to the ARB, [the] Claim . . . was not properly exhausted). The Grievance Records and Counseling Summary indicate, and Plaintiff does not challenge Defendants' assertion, that he failed to submit Grievance No. 112-10-21 to the third and final level of the grievance process – the ARB. As a result, the Court concludes that Plaintiff did not fully exhaust his administrative remedies for Grievance No. 112-10-21.

The only grievance remaining is Grievance No. 222-8-21. Plaintiff successfully completed all steps of the IDOC Grievance procedures for Grievance No. 222-8-21 and did not prematurely file suit. (Doc. 44, Exh. D, p. 33–34). Plaintiff asserts that Grievance 222-8-21 sufficiently places the facility on notice about his complaints of inadequate care for his shoulder injury. In his Response to Defendants' Motions for Summary Judgment Plaintiff stated the following:

> [In Grievance 222-8-21,] Plaintiff complained that despite being seen by a
> Nurse Practitioner in July of 2021, where he was given poor or weak pain
> meds for a torn rotator cuff, the x-rays that [were] scheduled were cancelled
> due to institutional lockdown and the physical therapist refused to evaluate
> Plaintiff because of the seriousness of the injury and pain meds. [were] not
> renewed . . . . Plaintiff alleges that [Defendants] saw him after his injury and
> did not render appropriate care.

(Doc. 52, p. 2-3). However, Defendants Dearmond and King assert that Grievance No.

222-8-21 cannot relate to their care of Plaintiff because neither Defendant saw Plaintiff

until August 30, 2021. (Doc. 33, p. 12; Doc. 44, p. 15-16). Additionally, Defendant

Moldenhauer argues that Grievance No. 222-8-21 fails to grieve the issues raised by

Plaintiff in this lawsuit as "Plaintiff's sole allegation against Defendants is that 'they gave

him weak pain medication, which [Plaintiff] alleges did not help his obvious pain.'" (Doc.

39, p. 12). The Court will address each of the Defendants' arguments in turn.

Defendant Dearmond's and King's argument is consistent with the documentation

contained in Plaintiff's Medical Records. Plaintiff's medical records show that Plaintiff

saw Defendants Dearmond and King for the first time regarding his shoulder injury on

August 30, 2021. (Doc. 44, Exh. B, p. 17). Grievance No. 222-8-21 was filed prior to this

date on August 19, 2021. (Doc. 39, Exh. 1, p. 36). Therefore, it is inconceivable that

Grievance No. 222-8-21 could relate to the conduct of Defendants Dearmond and King

with respect to the care of Plaintiff's shoulder injury. As a result, Grievance 222-8-21 could

not have been exhausted against Defendants Dearmond or King.

Defendant Moldenhauer's argument, on the other hand, is not persuasive to the

Court. Defendant Moldenhauer reasons that it is "not reasonable to conclude that when

Plaintiff complained that his pain medications had run out, that he was also complaining

that the pain medication was ineffective." (Doc. 39, p. 12). However, near the conclusion of Grievance No. 222-8-21, Plaintiff also states that he was "still in excruciating pain since June 2021." (Doc. 39, Exh. 1, p. 37). Thus, an inference could be drawn that Plaintiff was complaining that not only had his pain medication run out, but that it was also ineffective. Plaintiff's statement could then be understood as communicating that even though pain medication had been previously provided that he was still enduring significant pain despite having the pain medication available to him. Because such an inference can readily be made, Plaintiff's claims against Defendant Moldenhauer survive summary judgment.

CONCLUSION

Accordingly, the Court **GRANTS** Defendant King's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 43). Further, the Court **GRANTS in part and DENIES in part** Defendant Dearmond's and Moldenhauer's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 38). The Court **GRANTS** the Motion as to Defendant Dearmond and **DENIES** the Motion as to Defendant Moldenhauer. Thus, the Court **DISMISSES** without prejudice Plaintiff's claims against Defendants Dearmond and King. The Court **DIRECTS** the Clerk of Court to enter judgment reflecting the same at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED:  July 11, 2023.**

Digitally signed by
Judge Sison
Date: 2023.07.11
13:56:26 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**