## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAUNTAE ROBERTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:22-cv-00750-GCS |
| | ) |
| MICHAEL MOLDENHAUER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In this suit under 42 U.S.C. § 1983, Shauntae Robertson, an inmate at the Illinois Department of Corrections ("IDOC"), claims that he experienced sudden shoulder pain while lifting weights at Menard Correctional Center ("Menard") and received inadequate medical treatment for his pain. Defendant Michael Moldenhauer, a nurse practitioner at Menard, insists that the Eighth Amendment claim against him must be dismissed because he did not treat Plaintiff's shoulder pain with deliberate indifference. The Court agrees and grants summary judgment in favor of Defendant Moldenhauer.

### FACTUAL BACKGROUND

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

### A.    Plaintiff's Medical Records:

Sometime in June 2021, while incarcerated at Menard, Plaintiff experienced a

sudden pain in his shoulder while he was lifting weights during yard time. (Doc. 66-2, p. 1). He was seen by an LPN/CMT on June 24, 2021, for non-specific discomfort. *Id.* Plaintiff reported pain in the right side of his chest and the front of his right shoulder. *Id.* He indicated the pain had begun approximately three to four weeks prior while he was doing bench presses of approximately 200 lbs. *Id.* He rated the pain an "8/10 when present." *Id.* The LPN/CMT noted "deformity to upper right pectoral area" and gave Plaintiff 325 mg of Acetaminophen for 3 days and a referral to an MD or NP. *Id.*

On July 6, 2021, Plaintiff was seen by Moldenhauer for his right shoulder pain. (Doc. 66-1, p. 1; 66-2, p. 3). Plaintiff complained that it hurt when he placed his shirt over his head. (Doc. 66-1, p. 1-2; 66-2, p. 3). Moldenhauer noted that Plaintiff, who was cuffed, was able to complete all cuffed range of motion without difficulty. (Doc. 66-1, p. 1; 66-2, p. 3). He ordered chest and right shoulder X-rays for Plaintiff; he also prescribed 500 mg of Robaxin (a muscle relaxer) to be taken twice daily for two weeks, and 600 mg of Ibuprofen to be taken three times a day for two weeks, as needed. (Doc. 66-1, p. 2; 66-2, p. 3). He further referred Plaintiff for a physical therapy evaluation. *Id.*

Plaintiff was unable to receive X-rays as scheduled on July 29, 2021, due to his cell house being on lockdown. (Doc. 66-2, p. 3). His X-rays were rescheduled for August 25, 2021. (Doc. 66-2, p. 7-8).

On August 18, 2021, Plaintiff was seen by an RN for his shoulder pain. (Doc. 66-2, p. 5). He reported that, while doing bench presses in June 2021, he heard and felt a "pop" in his right shoulder, and, since then, there was a "lump" in his right chest. *Id.* The RN noted a "right chest/pectoral area palpable mass" that was "tender to touch, non-mobile,

no discoloration, no redness," but that Plaintiff's motion in his right shoulder range of motion was normal, and his daily activities were unaffected by pain. *Id.* The RN instructed Plaintiff to avoid weightlifting with his right arm and shoulder, pushups, and pull-ups, referred him to an MD/NP, and continued his 325 mg of Acetaminophen. *Id.*

Plaintiff was assessed by a physical therapist the following day. (Doc. 66-2, p. 6). Upon evaluation, the physical therapist noted that Plaintiff appeared to have a significant pectoral major tear. *Id.* The physical therapist discontinued physical therapy and referred Plaintiff back to an MD/NP for an orthopedic evaluation. *Id.*

On August 25, 2021, Plaintiff received x-rays for his right shoulder and chest. (Doc. 66-2, p. 7-8). The x-rays revealed a "high riding humerus and mild osteoarthritis of the AC and glenohumeral joints" but showed no acute bony fracture in the right shoulder region. *Id.* at p. 8. The chest views showed clear lungs and normal cardio mediastinal silhouette. *Id.* The radiologist found no active disease. *Id.*

On August 30, 2021, Plaintiff was seen by Dr. Tawanna King for his right chest and shoulder pain. (Doc. 66-2, p. 2). Dr. King agreed with the physical therapist's assessment that Plaintiff had a "complete tear of pectoral muscle." *Id.* at p. 2, 9-10, 11. Dr. King referred Plaintiff for a right chest MRI; she also noted that he would most likely need a referral to an orthopedist depending on the MRI findings. *Id.* at p. 9. Dr. King renewed Plaintiff's Robaxin but did not prescribe new pain medications; she instructed him to avoid upper extremity and chest strengthening exercises. *Id.*

Defendant Moldenhauer reviewed Plaintiff's x-ray results on September 7, 2021, and concluded the results were normal or stable because "the x-rays did not show bony

fractures, and the radiologist's impression (diagnosis) was that there was 'no active disease.'" (Doc. 66-1, p. 2; 66-2, p. 13).

On September 23, 2021, Plaintiff was admitted to the emergency department at Chester Memorial Hospital ("Memorial Hospital") for acute gastroenteritis. (Doc. 66-2, p. 103). Plaintiff complained of abdominal pain, nausea, and "muscle pain from an injury in June 2021[,]" but denied having chest pain. *Id.* Upon his return to Menard the following day, he reported to a nurse that he felt "so much better" and had "no complaints at this time." *Id.* at p. 51.

Plaintiff received a chest MRI on October 27, 2021. (Doc. 66-2, p. 20-22).

On November 17, 2021, Defendant Moldenhauer noted that Plaintiff had been scheduled for medical furlough review for evaluation of his shoulder, but that no documents regarding that visit had been received. (Doc. 66-1, p. 2; 66-2, p. 23).

Two days later, Plaintiff was seen by an MD for sharp left chest pain and was transferred to the emergency room at Memorial Hospital. (Doc. 66-2, p. 24-33). On November 23, 2021, at a follow-up visit at Menard, Plaintiff noted that his left-side chest pain had since improved, and his EKG test showed normal results. *Id.* at p. 27, 32. Plaintiff was scheduled for a follow-up call with a nurse regarding his shoulder MRI results. *Id.* at p. 25.

Plaintiff received his MRI results on January 21, 2022. (Doc. 66-2, p. 35). The results indicated a "tear of the distal myotendinous junction of the right pectoralis major with retraction and scarring . . . and overall appearance favoring a subacute to chronic injury." *Id.* at p. 49. He was referred for an orthopedics consultation that same day. *Id.* at p. 36.

However, on January 31, 2022, a medical furlough clerk noted that the orthopedist refused to see Plaintiff for the referral listed, cancelled the visit, and advised Plaintiff to see a general surgeon. *Id.* at p. 38. Accordingly, Plaintiff was referred to a general surgeon consultation that same day. *Id.*

On March 15, 2022, Plaintiff saw an LPN/CMT regarding his right shoulder pain, MRI results, and plans for pain management. (Doc. 66-2, p. 47). The LPN/CMT noted no redness in Plaintiff's shoulder area or other signs of discomfort, prescribed 200mg of Ibuprofen for 3 days, and referred Plaintiff to an MD. *Id.*

On April 1, 2022, Plaintiff was referred to a cardiothoracic surgery consultation because the general surgeon had cancelled Plaintiff's consultation and advised that Plaintiff needed to be referred to a cardiothoracic surgeon. (Doc. 66-2, p. 51). His evaluation was approved on April 7, 2022. *Id.* at 52.

On April 10, 2022, Plaintiff reported to a nurse regarding chest pain with a pain level of 8/10. (Doc. 66-2, p. 53). He complained that nothing relieved his pain, and deep breaths and palpitations intensified his pain. *Id.* The nurse consulted with a doctor, who did not issue any new orders for Plaintiff and instructed that he could return to the health unit. *Id.*

On May 25, 2022, the Director of Nursing called Plaintiff to complete a wellness check after Plaintiff reported to a Mental Health Professional a pain level of 10/10. (Doc. 66-2, p. 54). However, upon arrival, the attending nurse noted that Plaintiff "was sleeping soundly; able to get out of bed without difficulty, no facial grimace or guarding noted." *Id.* Plaintiff told the nurse that he "tore a muscle 'some months ago.'" *Id.* The nurse

reassured Plaintiff that he had been referred to a surgeon and would be scheduled soon. *Id.*

On June 11, 2022, Dr. Glen Babich, MD, saw Plaintiff for his torn right shoulder muscle. (Doc. 66-2, p. 55). Dr. Babich recommended modifying restraints at custody/surgery discretion after Plaintiff stated that he did "not want to be cuffed in back." *Id.* Dr. Babich noted a change in Plaintiff's right chest muscle mass compared to his left and asked whether Plaintiff had been referred to surgery. *Id.* Plaintiff said that he had been, and Dr. Babich recommended a follow-up visit in three months. *Id.*

On July 4, 2022, Defendant Moldenhauer saw Plaintiff for a left forehead laceration. (Doc. 66-2, p. 56). Plaintiff complained that he wanted to be treated by an "MD[,] not Nurse Practitioner." *Id.* After Moldenhauer explained that he was the provider for that day, Plaintiff began raising his voice to Moldenhauer about his "poor care." *Id.* at p. 56-57. Moldenhauer called Dr. Myers regarding the best option for Plaintiff, because Plaintiff had verbally expressed that he did not want a nurse practitioner to care for him. *Id.* at p. 57. Yet, Plaintiff would not sign a refusal form. *Id.* Dr. Myers told Moldenhauer that he should send Plaintiff back to his cell if Plaintiff continued to refuse treatment. *Id.* After Moldenhauer again explained to Plaintiff that his options were to allow Moldenhauer to treat him or return to his cell, Plaintiff agreed to let Moldenhauer suture his laceration. *Id.* Plaintiff did not have any other complaints and was cooperative. *Id.*

On July 8, 2022, Defendant Moldenhauer again saw Plaintiff for a call-line follow-up visit regarding his right shoulder. (Doc. 66-1, p. 2; 66-2, p. 58). Moldenhauer noted that

Plaintiff had been evaluated for surgery for his torn pectoralis muscle. *Id.* Moldenhauer checked with medical furlough, who advised that they had been in contact with the cardiothoracic department at Washington University and that the University would contact medical furlough in the future regarding a surgery date. (Doc. 66-1, p. 2-3; 66-2, p. 58-59). Moldenhauer also noted that Plaintiff "made no mention of pain but was concerned about 'double cuff'" and to check on his future surgery. (Doc. 66-1, p. 3; 66-2, p. 59). Moldenhauer prescribed alternate cuffing for one year and 500 mg of Acetaminophen twice daily for 4 months to help with Plaintiff's pain. *Id.*

**B.    Plaintiff's Deposition Testimony**

Plaintiff was deposed on March 22, 2024. (Doc. 66-4, p. 1). Relevant to the pending motion, Plaintiff testified that Defendant Moldenhauer was deliberately indifferent in the treatment of his shoulder because "he didn't do nothing." *Id.* at p. 15. Plaintiff elaborated that Moldenhauer did not send him "out for the injury," and "whatever meds [Moldenhauer] gave," he was still in "excruciating pain." *Id.* He stated that, once the "little medication he did give" ran out, "they refused to send [him] more pain meds, even though it was not working." *Id.* at 18. Although Plaintiff admitted that Moldenhauer scheduled him for a physical therapist, he testified that the physical therapist "refused to see [him] because he knew [Plaintiff] was supposed to go out for the injury." *Id.* at p. 15, 18.

Plaintiff testified that he saw Defendant Moldenhauer twice for his shoulder, and

the second visit occurred "a couple months" after the first. *Id.* at p. 27-28.[1] He stated that he did not recall what he told Moldenhauer at the second appointment, but "most likely" had "complained to him about the medication and told him can he renew the muscle relaxers and – you know, and why haven't they sent me out for surgery." *Id.* at p. 28. When asked if he told Moldenhauer that his medications were not working, he said that he "basically told him in writing form and as well as grievances." *Id.* at 31. He claimed that, in response, Moldenhauer told him that he just had to "learn to deal with the pain." *Id.* at p. 31-32.

Finally, though it had been nearly three years since his injury, Plaintiff stated that he had still not received surgery. *Id.* at p. 15-16.

## PROCEDURAL BACKGROUND

On April 18, 2022, Plaintiff filed his Complaint related to the above events. (Doc. 1). At preliminary review, the Court allowed Plaintiff to proceed on the following claims:

> **Claim 1: Eighth Amendment deliberate indifference by Defendants Dearmond and Moldenhauer for their treatment of Plaintiff's shoulder.**

> **Claim 2: Eighth Amendment deliberate indifference by Defendant King for her treatment of Plaintiff's shoulder injury.**

(Doc. 8, p. 2, 9).[2]

---

[1]   Plaintiff's medical records and Defendant Moldenhauer's affidavit provide that Moldenhauer only treated Plaintiff's shoulder injury at appointments on July 6, 2021, and July 8, 2022. (Doc. 66-1, p. 1-2; 66-2, p. 3, 58). However, when ruling on motions for summary judgment, the Court resolves conflicts in the evidence in the non-movant's favor. *See Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). Therefore, the Court accepts Plaintiff's version of events at this time.

[2]   The Court dismissed Plaintiff's claims against Nurse Maryanne, Wexford Health Sources, Inc., John/Jane Doe 1, DeAnna Kink, Kelly Pierce, A. Wills, Crain, and John/Jane Doe 2. (Doc. 8, p. 9).

On July 11, 2023, the Court granted in part a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies by Defendants Moldenhauer and Dearmond and granted in its entirety Defendant King's motion regarding the same. (Doc. 56). The Court dismissed Defendants Dearmond and King accordingly. *Id.* The only remaining claim in this case relates to Defendant Moldenhauer's deliberate indifference for his treatment of Plaintiff's shoulder.

On June 4, 2024, Defendant Moldenhauer filed the instant Motion for Summary Judgment and Memorandum in Support. (Doc. 65, 66). Plaintiff responded on June 10, 2024. (Doc. 68). Moldenhauer replied on June 17, 2024. (Doc. 69). Accordingly, the motion is now ripe for the Court's review.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. P. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving

party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

DISCUSSION

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *See Greeno v. Daley*, 414 F.3d 645, 652–653 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). *Accord Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 828 (7th Cir. 2009) (stating that "deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail on such a claim, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong is whether the prisoner has shown he has an objectively serious medical need. *See id. Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton

infliction of pain if not treated. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

The second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citation omitted). Also, "mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotations and citations omitted).

For the purposes of this motion and based on the record before the Court, the Court finds that the Plaintiff's torn pectoralis muscle constitutes a serious medical need. Therefore, the Court turns to whether Defendant Moldenhauer had subjective knowledge of and recklessly disregarded Plaintiff's serious medical need. As explained below, even construing the evidence in the light most favorable to Plaintiff, the Court finds that there is insufficient evidence in the record to support Plaintiff's claim of deliberate indifference against Defendant Moldenhauer.

In his Response, Plaintiff claims that Defendant Moldenhauer's treatment

amounts to deliberate indifference for several reasons. (Doc. 68, p. 1-2). First, Plaintiff argues that Defendant Moldenhauer was deliberately indifferent to Plaintiff when he was in "serious" and "recognizable" pain and could not lift his shirt over his head. *Id.* at p. 1. Second, Plaintiff notes that the physical therapist refused to evaluate Plaintiff and told him that "I can't see you like that they have to send you out for that first before I can evaluate you." *Id.* at p. 2. Third, Plaintiff claims that he was "ordered special pain meds by an outside doctor" but never received them. *Id.* Fourth, and finally, Plaintiff alleges that he saw an "outside doctor" sometime in 2022 who told Plaintiff that he would not send Plaintiff to surgery because over a year had passed since Plaintiff's injury, such that surgery would not be successful; the prison was supposed to send Plaintiff "straight out for this kind of injury." *Id.*

## A.    Visit on July 6, 2021

The first argument appears to refer to Plaintiff's first visit with Defendant Moldenhauer on July 6, 2021, approximately a month after his shoulder injury occurred. (Doc. 66-1, p. 1, 3). Plaintiff claims that Moldenhauer was deliberately indifferent to his "serious" and "recognizable" pain because his "order of x-rays and a physical therapy evaluation" were "unsuccessful." (Doc. 68, p. 1). However, the evidence shows that the "order" was successful: Plaintiff received a physical therapy evaluation on July 7, 2021, and x-rays on August 25, 2021. (Doc. 66-2, p. 6-8). Neither does the evidence support that these treatments were "unsuccessful" simply because the physical therapist did not complete the evaluation or because Moldenhauer deemed his x-ray results as "normal or stable." *Id.* at p. 13. In essence, the Court cannot conclude that Plaintiff's constitutional

rights were violated based on his dissatisfaction with the treatment he received.

Unless no minimally competent professional would have chosen the same course of treatment under the circumstances, courts defer to the treatment decisions of medical professionals. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Sain v. Wood,* 512 F.3d 886, 894–895 (7th Cir. 2008)). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (citing *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006)). This is because "the Constitution is not a medical code that mandates specific medical treatment." *Snipes*, 95 F.3d at 592. Neither is a mistake in professional judgment alone enough to establish deliberate indifference. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). In essence, a doctor's treatment must be so blatantly inappropriate as to be divorced from any medical judgement to constitute deliberate indifference. *See Anderson v. Randle*, No. 11-1890, 451 Fed. Appx. 570, 572 (7th Cir. Nov. 23, 2011).

The Court cannot say that is the case here. Plaintiff complained of pain when putting his shirt over his head to Moldenhauer at his visit on July 6, 2021. (Doc. 66-2, p. 3). However, Moldenhauer noted that Plaintiff was still able to complete a normal range of motion without difficulty, accounting for limitations in movement due to his handcuffs. *Id.* Moldenhauer ordered Plaintiff chest and right-shoulder x-rays, prescribed Robaxin and Ibuprofen, and referred Plaintiff to a physical therapy evaluation. *Id.* Simply put, Moldenhauer did not ignore Plaintiff's pain, but treated it accordingly. Notably, Plaintiff does not appear to disagree with the Moldenhauer's chosen course of treatment,

only with the "unsuccessful" results he received. *Id.* at p. 13. However, Moldenhauer was not involved in Plaintiff's physical therapy evaluation. Moldenhauer also reviewed Plaintiff's x-ray results and found them "normal or stable." (Doc. 66-2, p. 13). Even if Moldenhauer's referral of Plaintiff to physical therapy or reading of his x-ray results were a mistake, negligence, or malpractice, it would not be enough to constitute deliberate indifference. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (stating that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, no reasonable jury could conclude that Moldenhauer treated Plaintiff with deliberate indifference.

**B.    Physical Therapy Evaluation**

As to Plaintiff's second argument, Plaintiff fails to show how the physical therapist's actions amount to Defendant Moldenhauer's deliberate indifference. To show that Defendant Moldenhauer was deliberately indifferent, Plaintiff must point to some sort of causal connection or affirmative link between his actions and the conduct of which he complains. *See, e.g., Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (noting that the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye[.]") (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988)). As stated above, although Moldenhauer referred Plaintiff to physical therapy on July 6, 2021, he was not personally involved in the physical therapist's decision to discontinue the evaluation and refer Plaintiff to an MD/NP for an orthopedic evaluation. *Id.* Therefore, even if his physical therapist's actions constituted deliberate indifference, they are not relevant to the claim here against Defendant Moldenhauer.

## C.    Pain Medications

Similarly, Plaintiff's vague references to an "outside doctor" and "prescription for special pain meds" in his third argument do not support his deliberate indifference claim against Defendant Moldenhauer. This Court is not under an obligation "to scour the record looking for factual disputes" and notes that Plaintiff's failure to cite to the record in his Response does not comply with this Court's Local Rule 56.1(b). *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Nevertheless, the Court notes that in Defendant's Reply, Defendant's counsel "opine that Plaintiff might be referring to Mirtazapine (Remeron 15mg), which is an anti-depressant sometimes used [for] off label pain management, which was prescribed while Plaintiff was at Memorial Hospital ED on November 23, 2021, for *left* chest pain . . . [and] was renewed for him regularly at Menard." (Doc. 69, p. 2) (emphasis in original). Whether this speculation is accurate or not, Defendant Moldenhauer was not involved in the prescription of the "special pain meds" by the "outside doctor" or in Plaintiff's receipt of said medications. As the prescription did not "occur at [Defendant Moldenhauer's] discretion or with [his] knowledge and consent[,]" Plaintiff's third argument does not establish a dispute as to Defendant Moldenhauer's deliberate indifference. *See Gentry*, 65 F.3d at 561 (quoting *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985)).

Plaintiff also mentions the "special pain meds" to show Moldenhauer's deliberate indifference for prescribing him "weak pain meds[.]" (Doc. 66-4, p . 16). The Eighth Amendment requires "medical officials who know that an incarcerated patient is suffering to take 'reasonable measures' to alleviate that pain." *Arce v. Wexford Health*

*Sources Inc.*, 75 F.4th 673, 681 (7th Cir. 2023) (citing *Arnett*, 658 F.3d at 753–754). However, it does not "entitle incarcerated patients to their preferred pain medication, nor does it impose the unrealistic requirement that doctors keep patients completely pain-free." *Id.* (citing *Arnett*, 658 F.3d at 754; *Snipes*, 95 F.3d at 592). To survive summary judgment, a plaintiff must provide evidence that would allow a reasonable jury to conclude that the defendant was deliberately indifferent to his pain. *Id.* Such evidence may include that "defendants 'persist[ed] in a course of treatment known to be ineffective" or that "defendants' recommended course of treatment was 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (citing *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020); *Arnett*, 658 F.3d at 75).

Here, Plaintiff's medical record shows that Moldenhauer prescribed Plaintiff Robaxin and Ibuprofen from July 6, 2021, to July 21, 2021. (Doc. 66-2, p. 60). Plaintiff testified that the Ibuprofen was ineffective, but the Robaxin "work[ed] to an extent." (Doc. 66-4, p. 18-20, 23). He stated that, once he ran out, he was not "renewed . . . any pain medication after that." (Doc. 66-4, p. 28). He testified that he gave his prescription renewal request to "Nurse Marianne" and "wrote grievances about it." (Doc. 66-4, p. 23-24). He also claimed that he "basically told [Moldenhauer] in writing form and as well as grievances" that his medications were not working, and "most likely" complained to Moldenhauer at his second visit "about the medication and told him can he renew the muscle relaxers." *Id.* at p. 28, 31. He testified that Moldenhauer told him he had to "learn to deal with the pain." *Id.* at p. 31-32.

Plaintiff has not shown that Moldenhauer was deliberately indifferent as he has not demonstrated that Moldenhauer knew the Robaxin and Ibuprofen were ineffective but nevertheless persisted in that course of treatment. Plaintiff did not testify that he requested any other pain medications from Moldenhauer, but only asked him to renew his muscle relaxers. (Doc. 66-4, p. 28, 31). He also filed a grievance on August 19, 2021, in which he stated that his "meds have not been renewed" after his visit with Moldenhauer. (Doc. 66-3, p. 6).[3] His requests for renewal of his medications does not show that Moldenhauer knew the Robaxin and Ibuprofen were ineffective. In fact, Plaintiff's request for renewals of his medications suggests the opposite: that they did help treat his pain. Plaintiff admits that the Robaxin worked "to an extent." (Doc. 66-4, p. 23). Finally, Moldenhauer's alleged statement to Plaintiff that "he had to learn to deal with the pain," is also not enough to show deliberate indifference. *Id.* at p. 31-32. Moldenhauer was not required to keep Plaintiff "completely pain-free." *Arce*, 75 F.4th at 681.

Neither can the Court say that "no minimally competent professional" would have prescribed Plaintiff Robaxin and Ibuprofen. *See Pyles*, 771 F.3d at 409 (citing *Sain v. Wood,* 512 F.3d 886, 894–895 (7th Cir. 2008)). Here, Plaintiff admits, and his medical records show, that his Robaxin was renewed by Dr. Tawanna King from August 30, 2021,

---

[3] Plaintiff filed other grievances on October 5, 2021, April 13, 2022, and May 18, 2022. (Doc. 66-3, p. 3-7). Plaintiff complained of pain from his injury in all the grievances and requested pain meds in the October and April grievances. *Id.* Plaintiff does not identify Moldenhauer in those grievances. Plaintiff's medical record shows that Moldenhauer treated Plaintiff on July 6, 2021, and July 8, 2022, for his shoulder injuries. (Doc. 66-2, p. 3, 58). In the intervening period, he was treated by many other providers. *See generally* (Doc. 66-2). As such, there is no evidence that Moldenhauer would have been aware of Plaintiff's requests for pain medications based on those grievances.

to November 30, 2021. (Doc. 66-2, p. 61; Doc 66-6, p. 2). Apart from the Robaxin, Plaintiff was only ever prescribed Ibuprofen or Acetaminophen by the various medical professionals who treated his shoulder pain. (Doc. 66-2, p. 1, 5, 47). There are many reasons why Moldenhauer, or any of Plaintiff's other medical providers, declined to prescribe Plaintiff stronger pain medications. *See, e.g.*, *Arce*, 75 F.4th at 681 (explaining that "[t]here are many reasons for doctors to tread carefully when prescribing strong pain medications.") (internal citations omitted). Moldenhauer has stated that, in his professional opinion, "the use of muscle relaxers and pain relievers, [was] appropriate treatment for [Plaintiff's] shoulder at that point, as they are first-line treatments provided for chest/shoulder pain." (Doc. 66-1, p. 2). *See, e.g.*, *Owens v. Duncan*, No. 18-1416, 798 Fed. Appx. 9, 13 (7th Cir. Jan. 9, 2020) (reasoning that the defendant nurse practitioner was not deliberately different where, despite the plaintiff's claim "that Claritin was ineffective for his sinus issues, no evidence suggest[ed] that [the defendant] knew that Claritin would not help him" and "her decision to offer him Claritin was based on her medical judgment"). Plaintiff has not provided evidence suggesting that he requested stronger pain medication from Moldenhauer. And, regardless, Plaintiff was not "entitled to [his] preferred pain medication" under the Eighth Amendment. *Arce*, 658 F.3d at 754. Accordingly, Plaintiff has failed to show that Moldenhauer was deliberately indifferent for prescribing him Ibuprofen and Robaxin.

## D.    Delayed Surgery Referral

Plaintiff argues that, based on statements by "another outside doctor" in 2022, the prison "was suppose[d] to send [Plaintiff] straight out for this kind of injury." (Doc. 68,

p. 2).[4] According to Plaintiff, the outside doctor stated that "he [would] not be sending the Plaintiff out for surgery because it will be unsuccessful because it [had been] over a year since [his] injury." *Id.* In essence, he argues that, because of the delay in his referral to surgery, Plaintiff was unable to receive surgery on his shoulder.[5]

A delay in treatment can rise to the level of deliberate indifference if the plaintiff presents medical evidence that the delay "exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) and *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)); *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). Where, as here, the plaintiff alleges that his treatment was delayed rather than denied, courts have required the plaintiff to present "verifying medical evidence" that the delay, and not the underlying condition, caused harm. *Jackson*, 733 F.3d at 790 (citing *Williams v. Liefer*, 491 F.3d 710, 714–715 (7th Cir. 2007)). Importantly, the plaintiff must also show that the defendant caused the delay through his actions or inaction. *See Walker v. Wexford*

---

[4]      The Court cannot identify the "outside doctor" with complete certainty as Plaintiff fails to name the doctor or provide citations to the record. However, in his deposition, Plaintiff testified that the last doctor he saw for his injury was in summer 2022, though he did not recall his name. (Doc. 66-4, p. 34). Dr. Babich, who Plaintiff saw in June 2022, is the last doctor on record who treated Plaintiff for his injury. (Doc. 66-2, p. 87). Dr. Babich's notes from that visit do not match Plaintiff's version of events, but only state that Plaintiff mentioned he was referred to a surgery when asked about it. *Id.* This is a matter of credibility that the Court cannot resolve on summary judgment. *See National Athletic Sportswear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Nevertheless, for reasons explained more thoroughly below, Defendant Moldenhauer is not personally responsible for the scheduling delays in Plaintiff's surgery. Thus, although Dr. Babich's statements to Plaintiff are disputed, the dispute is not material to the only issue before the Court, *i.e.*, Defendant Moldenhauer's deliberate indifference.

*Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) *(citing Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)).

In *Walker*, the Seventh Circuit considered whether a doctor was deliberately indifferent for not immediately referring the plaintiff, an inmate in the custody of IDOC, to the University of Illinois at Chicago Medical Center ("UIC") to assess his difficulties in recovering from spinal surgery. *See Walker*, 940 F.3d at 957-959. In that case, the doctor first examined the plaintiff in late September, approximately eighteen months after the spinal surgery, and noted that the plaintiff showed signs of upper motor neuron syndrome. Instead of immediately referring the plaintiff to UIC for a neurosurgery consultation, the doctor ordered x-rays, prescribed muscle relaxers and anti-inflammatory medication, and noted that he would make a referral after receiving the plaintiff's blood test results. *Id.* at 958. He made the referral, which was approved in early December that same year. *Id.* However, UIC did not schedule a neurology appointment until late April the next year. *Id.* The Seventh Circuit held that the doctor was not deliberately indifferent due to the delay in the plaintiff's care. *Id.* at 965. The Court reasoned that although "an immediate referral to UIC would have been beneficial," the doctor "made a reasonable medical judgement to delay referring [the plaintiff] until he had more information so that he could make a more informed referral request." *Id.* Further, the Court explained that, despite the clear delays in the plaintiff's treatment, the doctor "did what he could within the limits of his role to move the ball forward" and could not be blamed for scheduling delays outside of his control. *Id.* at 966.

Here, Plaintiff experienced similar delays in receiving a referral to surgery.

Plaintiff's medical record shows that he was first referred to a general surgeon

consultation on January 21, 2022, approximately 7 months after his initial visit with an

LPN/CMT at Menard related to his injury. (Doc. 66-2, p. 1, 38). As in *Walker*, Plaintiff

received attention and tests designed to accurately assess his medical needs so he could

receive medical treatment. *See, e.g.*, *Walker*, 940 F.3d at 965 (noting that the doctor "made

referrals and re-referrals when necessary, all while treating [the plaintiff's] symptoms" .

. . and that such "treatment was not outside the bounds of medical professionalism"). In

the 7 months between Plaintiff's injury and his surgery referral, he received treatment

specifically for his shoulder by Defendant Moldenhauer on July 6, 2021, treatment by an

RN at Menard on August 18, 2021, a physical therapy evaluation on August 19, 2021, x-

rays for his right shoulder and chest on August 25, 2021, treatment by Dr. King on August

30, 2021, and a chest MRI on October 27, 2021. (Doc. 66-2, p. 2-3, 5-8, and 20-22). Although

an immediate referral to a cardiothoracic surgeon may have been beneficial, Plaintiff, as

an inmate, was not "entitled to demand specific care." *See Walker*, 940 F.3d at 965 (citing

*Arnett*, 658 F.3d at 754). *See also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)

(reiterating "that the Eighth Amendment does not require that prisoners receive

'unqualified access to health care'" but that "they are entitled only to 'adequate medical

care.'") (internal citations omitted). Moldenhauer, as a medical professional, was

permitted to "choose from 'a range of acceptable courses based on prevailing standards

in the field,'" and the Court cannot say that his treatment decisions were outside of those

standards. *See id.* at 965 (citing *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). *See also*

*Pyles*, 771 F.3d at 409 (explaining that courts defer to the treatment decisions of medical

professionals unless no minimally competent professional would have chosen the same course of treatment under the circumstances).

Moreover, Moldenhauer is not responsible for the delays in Plaintiff's surgery because they were due to circumstances outside his control. As noted above, Plaintiff was referred to an orthopedics consultation on the same day he received his MRI results, January 21, 2022. (Doc. 66-2, p. 35). After the orthopedist refused to see Plaintiff, and advised that Plaintiff see a general surgeon, Plaintiff was referred to a general surgeon consultation on January 31, 2022. *Id.* at p. 38. Then, on April 1, 2022, Plaintiff was referred to a cardiothoracic surgeon after the general surgeon cancelled Plaintiff's consultation and advised that Plaintiff be referred to a cardiothoracic surgeon instead. *Id.* at p. 51. On July 8, 2022, when Moldenhauer saw Plaintiff again, he noted that Plaintiff had been evaluated for surgery. *Id.* at p. 58. Accordingly, he checked with medical furlough on the status of Plaintiff's surgery. *Id.* Medical furlough advised him that they were in contact with the cardiothoracic department at Washington University and that the University would contact them regarding a scheduling date. *Id.* at p. 58-59. At that visit, Moldenhauer also prescribed alternate cuffing upon Plaintiff's request and prescribed him Acetaminophen for pain management. *Id.* at p. 59. Thus, nothing in the record suggests that Moldenhauer's actions or inaction caused the scheduling delays for Plaintiff's surgery. Instead, the evidence suggests that Defendant Moldenhauer did what he could within his limited role to "move the ball forward" on Plaintiff's treatment by checking on his surgery status and treating him for his injuries. *See id.* at 66. Therefore, no reasonable jury could find he was deliberately indifferent in violation of Plaintiff's

Eighth Amendment rights.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Moldenhauer's Motion for Summary Judgment. (Doc. 65). The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  March 28, 2025.**

Gilbert C Sison

Digitally signed by Gilbert C Sison Date: 2025.03.28 13:49:00 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**